

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

JEFFREY LOPERFIDO
*Senior Counsel*
Phone: (212) 356-2384
Fax: (212) 356-3509
jloperfido@law.nyc.gov

December 21, 2015

**BY ECF**
Hon. Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Adela Pagan v. City of New York, et al., 15-CV-5825 (ARR) (RLM)

Your Honor:

      We represent the City of New York ("City") in the above-referenced matter. In accordance with Your Honor's Individual Rule III.A, we submit this letter to request a pre-motion conference for a partial motion to dismiss the complaint.

      By way of background, Plaintiff's decedent, Mario Ocasio, died on or about June 8, 2015. On that date, his girlfriend called 911 because he was behaving "in strange manner." NYPD officers responded to the 911 call and found Mr. Ocasio acting "delusional," screaming "I am God! I am God!" and "refus[ing] . . . to put his hands behind his back." News accounts of the incident indicated that Mr. Ocasio was wielding a pair of scissors and high on drugs. The complaint alleges that the responding officers used escalating degrees of force, including a Taser, to subdue Mr. Ocasio. Once subdued, EMS technicians transported Mr. Ocasio to a local hospital. Soon thereafter, Mr. Ocasio was pronounced dead of cardiac arrest.

      Plaintiff Adela Pagan in her own right and as administrator of the Estate of Mario Ocasio seeks money damages in this action brought pursuant to 42 U.S.C. § 1983 and state law. We wish to move for partial dismissal of the complaint pursuant to F.R.C.P. 12(b)(6) as follows:

      <u>*Monell* Liability under 42 U.S.C. § 1983</u> (Count III, ¶¶ 158-164). Under *Monell v. Dep't of Soc. Servs.*, municipalities are not subject to liability under a theory of *respondeat superior*, but rather on the basis that their "policy or custom . . . inflicts the injury" upon the plaintiff. 436 U.S. 658, 691-94 (1978). Thus, to make out a colorable claim of municipal liability a plaintiff must "'plead and prove: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff appears to advance a *Monell* claim based on a failure to provide adequate training and supervision with respect to interactions with persons with mental illness. *See generally* Compl. ¶¶ 7(c), 44, 73, 90, 102, 146-151, 163.[1] Municipal liability, however, "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference." *City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989). To meet this standard, a plaintiff must allege that: (1) a policymaker knows to a moral certainty that its employees will confront a given situation; (2) the situation either presents employees with a difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling the situation; and (3) the wrong choice by employees will frequently cause deprivation of constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). In short, a plaintiff must demonstrate that the municipality was on notice of the alleged unconstitutional conduct. *Connick*, 563 U.S. at 59-63 ("[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary").

Plaintiff's allegations fail to demonstrate a pattern of unconstitutional conduct that would put the City on notice of deficiencies in its training program. Plaintiff contends that "mental health professionals and advocates have long called upon NYPD to institute . . . generally-accepted best practices" and that a committee formed in 2008 to improve NYPD's policies disbanded before issuing any recommendations. Compl. ¶¶ 46-49. Such allegations cannot support a showing of deliberate indifference. *Jacquez*, 2014 U.S. Dist. LEXIS 81577, at *18 n.6 ("the question is not whether more effective models exist, but whether the City's current training was so insufficient—and the City was on notice that it was so insufficient—that the City's failure to use a different training model amounted to a constitutional violation.").

Plaintiff also highlights seven incidents where NYPD officers used force against allegedly mentally ill individuals resulting in death. Compl. ¶ 147. These incidents, however, are insufficient to put the City on notice regarding the need for additional training. First, the complaint fails to allege that any of the incidents involved a deprivation of constitutional rights. As explained by a district court in this Circuit addressing five of the same incidents: "In certain circumstances, deadly force may be necessary and appropriate. . . . simply listing instances in which EDPs were killed in encounters with law enforcement is insufficient to support a pattern of unconstitutional violations." *Jacquez*, 2014 U.S. Dist. LEXIS 81577, at *16-*17; *see also Cerbelli v. City of New York*, 2008 U.S. Dist. LEXIS 109341, at *68 (E.D.N.Y. 2008) ("a series of complaints against the NYPD [concerning EDPs] does not demonstrate deliberate indifference"). Second, the underlying incident in this case, though resulting in death, did not involve the use of deadly force. Yet, all but one of the cited incidents involved officers

---

[1] The remainder of Plaintiff's municipal liability allegations concern supposed policies and practices of "conceal[ing] and escap[ing] responsibility for serious misconduct," Compl. ¶ 117(b); "improperly investigat[ing] complaints of physical abuse," *id*. ¶ 160; "fail[ing] to appropriately investigate . . . and discipline NYPD personnel [for] such conduct," *id*. ¶ 161; and "conduct[ing] inadequate screening [regarding officers'] propensity for violence and bias against [the mentally ill]," *id*. ¶ 162. Because Plaintiff offers no facts in support of these allegations, they should be disregarded. *See Araujo v. City of New York*, 2010 U.S. Dist. LEXIS 26082, at *29 (E.D.N.Y. Mar. 19, 2010) (allegations that defendants "acted pursuant to de facto [policies and practices] without any facts suggesting the existence of the same, are plainly insufficient"); *Abreu v. City of New York*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009) (same); *see also Estate of Jacquez*, 2014 U.S. Dist. LEXIS 81577, at *18-*20 (S.D.N.Y. June 9, 2014) (same).

discharging their firearm. Compl. ¶ 147(a), (b), (d)-(g). The only Taser case is markedly dissimilar. *Id*. ¶ 147(c). Third, Plaintiff has pled no facts to show how any of the seven incidents were the result of deficiencies in training. Finally, even if these incidents were sufficiently similar to the underlying incident and were caused by the same training deficiency, seven incidents spread out over fifteen years is not enough to establish a pattern. *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("isolated acts . . . by non-policymaking municipal employees are generally not sufficient to . . . justify municipal liability").

The only other allegations addressing deliberate indifference are made "upon information and belief" and concern awareness by supervisors of "reports and complaints against one or more of the [officers] with respect to the use of excessive force and/or mistreatment of [EDPs] prior to June 8th, 2015." Compl. ¶¶ 148-149. Though pleading upon information and belief is generally permitted, "such allegations must be accompanied by a statement of the facts upon which the belief is founded." *McNaughton v. de Blasio*, 2015 U.S. Dist. LEXIS 13352, at *20 (S.D.N.Y. Feb. 4, 2015). Plaintiff, however, has neither identified the supervisors or officers in question, nor provided a factual basis for the existence of the alleged complaints.

*Supervisory Liability/Failure to Train under § 1983 and EPTL § 11-3.2(b)* (Counts II, VII, ¶¶ 155-157, 185-189). Plaintiff alleges that unnamed supervisors caused the assault, injury and death of Mr. Ocasio by failing to adequately supervise and train their subordinates. These claims fail for the same reasons as that of the *Monell* claim. Moreover, Plaintiff has not plausibly pled that any supervisor was personally responsible for, negligently failed to prevent, or encouraged the constitutional violations or state torts allegedly committed. *Cerbelli*, 2008 U.S. Dist. LEXIS 109341, at *31.

*Negligence and Gross Negligence under EPTL § 11-3.2(b) and Negligent Infliction of Emotional Distress* (Counts V, VI & IX, ¶¶ 169-184, 192-197). Plaintiff's claims sounding in negligence should be dismissed because the factual allegations are "only consistent with a theory of intentional, or perhaps reckless, conduct." *See Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) (collecting cases).

*Wrongful Death under EPTL § 5-4.1(1)* (Count VIII, ¶¶ 190-191). This claim fails because no allegation as to Plaintiff's appointment as personal representative is contained in the complaint. *Chong v. N.Y.C. Transit Auth.*, 83 A.D.2d 546, 547 (N.Y. App. Div. 1981).

*Intentional Infliction of Emotional Distress* (Count X, ¶¶ 198-200). This claim fails because the conduct complained of falls within the ambit of traditional tort liability. *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (dismissing a claim of IIED as being encompassed by plaintiff's assault and battery claim).

*Respondeat Superior* (Count XI, ¶¶ 201-203). Because the foregoing state law claims fail, the *respondeat superior* claim against the City should also be dismissed.

Respectfully submitted,<br>
/s/<br>
Jeffrey Loperfido<br>
Assistant Corporation Counsel

cc: All counsel of record via ECF