UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ADELA PAGAN, in her own right and as Administrator of the ESTATE OF MARIO OCASIO, deceased,

**DECLARATION OF ARTHUR G. LARKIN**

Plaintiff,

15-CV-05825 (LDH) (RLM)

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

---------------------------------------------------------------------- x

**ARTHUR G. LARKIN**, for his declaration pursuant to 28 U.S.C. § 1746, states:

1. I am Senior Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, attorney for all defendants in this matter. I submit this declaration in accordance with the Court's order, dated June 8, 2016 (Dkt. 45), which directs the City to show cause why sanctions should not be imposed, because neither the undersigned, who is the Law Department supervisor on this matter, nor a representative of the Comptroller was present at the June 8, 2016, settlement conference. Except as otherwise stated, I have personal knowledge of the matters set forth in this declaration.

2. We respectfully submit that sanctions should not be imposed in the circumstances presented here. At the outset, counsel apologizes to the Court for any confusion or misinterpretation of the Court's order dated June 8, 2016, directing our attendance at the conference, and we apologize for any inconvenience to this Court. Any misinterpretation of the Court's order was unintended, and was not a deliberate disregard of this Court's orders.

3. At the June 8, 2016, conference, the Court stated that if the absence of the undersigned and a Comptroller's representative "proves an impediment to settlement, I will consider imposing sanctions" (6/8 Tr., at 9:11-13). As more fully set forth below, neither my absence nor the Comptroller's absence was an "impediment to settlement" at the June 8, 2016, conference.

**Factual Background and Settlement Discussions**

4. Plaintiff Adela Pagan, in her own right and as Administrator of the Estate of Mario Ocasio, deceased, commenced this action on or about October 8, 2015 seeking money damages pursuant to 42 U.S.C. § 1983 and state law (*see* Dkt. 1). She alleges that on June 8, 2015, approximately seven (7) police officers "brutally beat, bludgeoned, maced and electrocuted" the decedent, causing his death. (*Id.*, ¶ 4)

5. Substantial evidence available to both sides, however, casts serious doubt on plaintiff's allegations. The Medical Examiner concluded that Mario Ocasio died from "cardiac arrhythmia during excited delirium due to acute intoxication by synthetic cannabinoid," and that the manner of death was an accident, not homicide.

6. On June 8, 2015, the police responded to a 911 call at Mr. Ocasio's residence. His girlfriend Geneice Lloyd, who placed the call, told the 911 operator that "somebody gave [Mr. Ocasio] some K2 and he's really bugging out … You can't control him. He's got scissors in his hand." She also said, referring to Mr. Ocasio, that "he's violent right now, yes, he's not a violent man, but right now he needs to be tied down." (At the June 8, 2016, conference, my co-counsel Jeffrey Loperfido paraphrased Ms. Lloyd's statements on the call, *see* 6/8 Tr., at 37.)

7. The substance K2 is a synthetic cannabinoid, defined by the National Institute on Drug Abuse as a "man-made mind-altering chemical[] that [is] either sprayed on dried, shredded

plant material so [it] can be smoked (herbal incense) or sold as liquids to be vaporized and inhaled in e-cigarettes and other devices (liquid incense)." Synthetic cannabinoids "are sometimes misleadingly called 'synthetic marijuana' (or 'fake weed'), and they are often marketed as 'safe,' legal alternatives to that drug. In fact, they may affect the brain much more powerfully than marijuana; their actual effects can be unpredictable and, in some cases, severe or even life-threatening."[1]

8.  Unfortunately, in this case, it appears that K2 affected Mr. Ocasio severely and in a life-threatening manner. When officers arrived at the residence, they found Mr. Ocasio on the floor waving his hands and kicking, with broken furniture next to him and the apartment in disarray. Ms. Lloyd was locked in a bedroom along with her nephew and his nine-month old baby who was heard crying on the 911 call.

9.  The first officers to arrive asked Mr. Ocasio what was wrong and if he needed help. He was unresponsive but continued kicking and flailing his arms. In light of these circumstances, including the 911 call reporting a "violent" EDP and the broken furniture, the officers decided to restrain him, in order to ensure the safety of all concerned including Mr. Ocasio. They used an asp baton to stop the kicks by pressing it down on his legs, and also tried to use OC spray but the canister did not deploy.

10.  Other officers arrived and saw the first two officers struggling to restrain Mr. Ocasio. They attempted to assist, unsuccessfully. Finally, a sergeant arrived, saw four officers struggling with Mr. Ocasio, and decided to utilize his taser in order to subdue him. He ran the taser for one cycle into Mr. Ocasio's back, and right afterward the other officers handcuffed him.

11.  By this time, EMTs had arrived, and the EMTs checked his vital signs and administered a sedative to calm down Mr. Ocasio. He was placed on a stretcher, on his side, and

---

[1] *See* https://www.drugabuse.gov/publications/drugfacts/synthetic-cannabinoids

brought downstairs to an ambulance. By the time the EMTs reached the ambulance, however, Mr. Ocasio was no longer breathing. He was pronounced dead at the hospital.

12. Defendants do not know if Mr. Ocasio was employed at the time he died. He had been convicted of Robbery, 2nd degree, in 1981, and served approximately two years in state prison. He was then convicted of Attempted Murder, 2nd degree, in 1985, and served approximately twenty (20) years in prison. The victim in the latter case was a police officer.

13. Against this backdrop, plaintiff's counsel put forth a near-mid-eight figure settlement demand. Defendants do not normally disclose settlement demands or offers on the ECF docket, but will do so if the Court deems it necessary.

14. By email dated November 5, 2015, Israel Adam Burns, Esq., attorney for plaintiff, emailed defense counsel with the following message: "[M]y client has asked that your office provide a counter to our request for [the amount demanded] in the complaint." *See* Email dated November 5, 2015, 11:43:51 AM, annexed to this declaration as Ex. A. Prior to this communication, plaintiff had not transmitted any settlement demand, and accordingly, his message indicated to us that the demand for damages in the Complaint was, in effect, his settlement demand.

15. But this demand was well outside of any reasonable range where this case could be expected to settle. For this reason, we did not believe it would have been useful to engage in substantive discussions with plaintiffs' counsel, at that time. Accordingly, we replied that we would take no position on their settlement demand. *See* Email dated November 5, 2015, 12:38:57 PM, annexed to this declaration as Ex. B

16. Our message attempted to communicate that plaintiff's demand was so unrealistic that we could not be expected to negotiate over it.

17.     We heard nothing from plaintiff's counsel thereafter. Even when Your Honor scheduled the June 8, 2016, settlement conference, plaintiff's counsel never reached out to us to communicate a revised demand or to initiate further settlement discussions.

18.     Plaintiff also did not disclose to us any specific information that would have given us a better understanding of the basis for her valuation of the case. Plaintiff's initial disclosures, dated January 12, 2016, indicated "not applicable" in response to Rule 26(a)(1)(A)(iii)'s requirement for "a computation of each category of damages claimed by the disclosing party." *See* Plaintiff's Initial Disclosures, dated January 12, 2016, annexed to this declaration as Ex. C.

**The Court Schedules and Conducts the June 8, 2016, Conference**

19.     On January 14, 2016, the undersigned and co-counsel Jeffrey Loperfido, Esq., appeared for an initial conference. Israel Burns, Esq. and Brett Klein, Esq. appeared for plaintiff. At that time, settlement was discussed generally, as follows:

> THE COURT: I assume that the City will be providing a defense to any individual officers who are named and that any judgment or settlement would come from the City. So I don't know that it really makes sense to start litigating the *Monell* claims at this point in the proceeding. Does anyone disagree?
>
> . . . .
>
> THE COURT: All right. And it's my practice in all of my civil cases to schedule the matter for a settlement conference. Is this a case in which we should have the settlement conference while fact discovery is ongoing, after it's complete, after any expert disclosures? How do the parties feel about that?
>
> MR. KLEIN: I think it's really -- you know, I think you guys will have an understanding of what happened based on the investigation and whether you're ready to move forward on that.
>
> MR. LARKIN: Right now, your Honor, I would not -- I'm sorry -- I would not want to commit to any sort of settlement conference. I think we need to see the IAB file and what the investigation showed and the medical examiner's reports I think would tell us a lot about whether there's a case here. From what I understand, I don't believe the case is all that strong. I mean, we don't have the completed report yet, autopsy report but I don't expect that the Taser is going to

be the cause of death here, nor do I expect that the allegations about a beating are going to be substantiated by the forensic evidence. But I think it pays to wait before we schedule any sort of settlement conference with your Honor until we have more information.

THE COURT: Well, why don't we do this? Initially I was thinking the March 14th status report would just be a status report from defense counsel concerning the status of the IAB investigation. Maybe it makes more sense to have it a joint status report. Counsel can confer with one another in advance of filing that report and can then indicate, presumably by that time, there will have been some documentary discovery. You can also talk about whether it makes sense to put it down for a settlement conference in April or in June. Have those discussions and based on what the parties tell me, I will schedule further proceedings.

MR. KLEIN: Thank you. That sounds good.

MR. BURNS: Yes. Yes, your Honor.

MR. LARKIN: Thank you, your Honor.

. . . .

THE COURT: . . . . I normally encourage the parties at the initial conference to try to settle the case. I realize that in this case, that's premature but I will tell you that it is my practice to have settlement discussions and I've had many a case in which the parties walk in saying this case is not going to settle and lo and behold, it ends up settling. So I would ask everyone to keep an open mind.

See 1.14.16 Transcript of Initial Conference Before the Honorable Magistrate Roanne L. Mann, U.S.M.J. (Dkt. 38, at 18:20-25, 25:5-26:19; 39:18-24).

20. On January 14, 2016, following the initial conference, Your Honor ordered, *inter alia*, that "[b]y March 14, 2016, the parties shall file a joint status report that addresses the status of the IAB investigation and proposes a schedule for expert discovery and a settlement conference" (Dkt. 27).

21. On March 14, 2016, the parties submitted the joint status report (Dkt. 41). Defendants requested "that any settlement conference in this matter be scheduled for after the close of expert discovery." *Id.* Plaintiff requested "an earlier date following the exchange of

document discovery." *Id.* Defendants preferred a settlement conference after expert discovery because the IAB investigation and the medical examiner's report raised significant questions about Plaintiff's allegations and placed causation—an issue that would be informed by expert reports—front and center in the case.

22. On March 15, 2016, Your Honor entered the following docket entry: "Scheduling Order: re 41 Status Report filed by The City of New York. A Settlement Conference will be held on 6/8/2016 at 9:30 AM in Courtroom 13C South before Chief Mag. Judge Roanne L. Mann. All persons whose approval is needed to settle the case must attend in person. If the case doesn't settle, the Court will set its own schedule for expert discovery. Ordered by Chief Mag. Judge Roanne L. Mann on 3/15/2016. (Maynard, Pat) (Entered: 03/15/2016)."

23. This was the first settlement conference scheduled for this action. While Your Honor's order stated that "[a]ll persons whose approval is needed to settle the case must attend in person," it did not specify that a supervisor from the Office of the Corporation Counsel or a representative from the Comptroller's Office must attend. Moreover, given plaintiff's unreasonably high settlement demand and her unwillingness to reduce the demand prior to the June 8, 2016, conference despite three months' advance notice of the conference date, we did not believe that settlement was a realistic possibility. We had hoped that, at the June 8, 2016, conference, Your Honor would be able to assist in bringing plaintiff into a realistic range for this case. (We will, of course, discuss our views of the appropriate settlement range for this case at the July 6, 2016, conference, if Your Honor wishes.)

24. In other matters where Your Honor has directed the attendance of specific individuals in addition to the assigned ACC, we have always complied with the Court's

document discovery." *Id.* Defendants preferred a settlement conference after expert discovery because the IAB investigation and the medical examiner's report raised significant questions about Plaintiff's allegations and placed causation—an issue that would be informed by expert reports—front and center in the case.

22. On March 15, 2016, Your Honor entered the following docket entry: "Scheduling Order: re 41 Status Report filed by The City of New York. A Settlement Conference will be held on 6/8/2016 at 9:30 AM in Courtroom 13C South before Chief Mag. Judge Roanne L. Mann. All persons whose approval is needed to settle the case must attend in person. If the case doesn't settle, the Court will set its own schedule for expert discovery. Ordered by Chief Mag. Judge Roanne L. Mann on 3/15/2016. (Maynard, Pat) (Entered: 03/15/2016)."

23. This was the first settlement conference scheduled for this action. While Your Honor's order stated that "[a]ll persons whose approval is needed to settle the case must attend in person," it did not specify that a supervisor from the Office of the Corporation Counsel or a representative from the Comptroller's Office must attend. Moreover, given plaintiff's unreasonably high settlement demand and her unwillingness to reduce the demand prior to the June 8, 2016, conference despite three months' advance notice of the conference date, we did not believe that settlement was a realistic possibility. We had hoped that, at the June 8, 2016, conference, Your Honor would be able to assist in bringing plaintiff into a realistic range for this case. (We will, of course, discuss our views of the appropriate settlement range for this case at the July 6, 2016, conference, if Your Honor wishes.)

24. In other matters where Your Honor has directed the attendance of specific individuals in addition to the assigned ACC, we have always complied with the Court's

directions.[2] We simply did not interpret the order to be in the same vein, and apologize for the misunderstanding on our part.

25. We also believed—based on the Order and the procedural posture of the case—that the settlement conference would proceed in a manner consistent with Your Honor's routine practice whereby the Court hears from both sides, makes a settlement recommendation, and then the parties are allowed a short period of time (usually a day or two) to accept or reject the recommendation.

26. Accordingly, we understood Your Honor's order as only requiring the attendance of a representative from the City with authority to explain the City's settlement position.

27. Even now, approximately one month after the June 8, 2016, conference, plaintiff's settlement demand is not realistic given the circumstances of the decedent's death. Based on all of the information we have, defendants believe that Mr. Ocasio did not die as a result of wrongdoing by the police. Rather, our information indicates that he died because he smoked a "mind-altering" synthetic cannabinoid, which can "affect the brain much more powerfully than marijuana" with "unpredictable and, in some cases, severe or even life-threatening" consequences (*see* fn. 1, above).

28. As plaintiffs' counsel acknowledged at the June 8, 2016, conference, the Medical Examiner concluded that Mr. Ocasio descended into a state of "excited delirium" and suffered from an irregular heartbeat (arrhythmia) and cardiac arrest, as a result of his ingesting the toxic,

---

[2] *See e.g.*, *Nnodimele v. City of New York et al.*, 13-cv-03461-ARR-RLM (wherein Your Honor ordered that "The April 29th settlement conference is adjourned to May 9, 2014 at 9:30 a.m. The parties are reminded that client/decisionmakers must attend."); *Silvestri v. City of New York et al*, 14-cv-05437-WFK-RLM (wherein Your Honor ordered that "The April 24th settlement conference will go forward as scheduled and, in addition to counsel of record, must be attended by plaintiff Silvestri and a representative of the Comptroller's Office."); *Oquendo v. City of New York et al.*, 14-cv-02582-ENV-RLM (wherein Your Honor ordered that "The settlement conference will go forward as scheduled. In addition to counsel of record, plaintiff Oquendo and a representative of the Comptroller's Office must attend in person.").

synthetic cannabinoid. His death was tragic, but the Medical Examiner's conclusion indicates that the police are not to blame. No matter who attended the June 8, 2016, conference, this case would not have settled at that time. For this reason, my non-attendance and that of the Comptroller was not an "impediment" to settlement. Rather, plaintiff's unrealistic demand and expectations were, and continue to be, the main "impediments" to settlement.

29. We regret the misunderstanding that occurred, however, and we state affirmatively that we did not intentionally disregard the Court's order. We are taking the necessary steps to ensure the attendance at the July 6, 2016, conference of "all persons from the Office of Corporation Counsel and the Comptroller's Office whose approval is required in responding to any settlement recommendation by the Court," as ordered by Your Honor (Dkt. 45).

30. For the foregoing reasons, we respectfully submit that sanctions are not warranted in these circumstances.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York, on July 5, 2016.

_____
ARTHUR G. LARKIN

# EXHIBIT A

**Loperfido, Jeffrey (Law)**

| | |
|---|---|
| **From:** | israel <israel@burnsconsulting.us> |
| **Sent:** | Thursday, November 05, 2015 11:44 AM |
| **To:** | Loperfido, Jeffrey (Law) |
| **Cc:** | Oliver, Vincent (Law) |
| **Subject:** | RE: Notice of Filed ECF Case No.1:15-cv-05825 | Counsel for Adela Pagan |

Very well, my client will authorize these forms and will forward them to you shortly.

Also please give me some available times regarding a call to the Court today, also my client has asked that your office provide a counter to our request for ▬▬ in the complaint.

Israel Adam Burns, Esq.
_____

Israel A. Burns
Burns Consulting Inc
israel@burnsconsulting.us
30 Broad St. 14th Flr.
New York, NY 10004
Office: 347 709 2491
Fax: 718 744 2782

www.linkedin.com/in/israelburns
http://www.burnsconsulting.us
http://twitter.com/B_Consulting_Us

The information in this e-mail including any attachments is confidential and may be legally privileged. If you are not the intended recipient, please advise the sender immediately by return e-mail and then delete this e-mail and any attachments from your system. The unauthorized use, distribution, copying or alteration of this e-mail and any attachments is strictly forbidden. We have taken precautions to reduce the risk of transmitting software viruses but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses.

On November 5, 2015 at 9:51 AM "Loperfido, Jeffrey (Law)" <JLoperfi@law.nyc.gov> wrote:

Mr. Burns,

As noted in the original correspondence by my colleague Vincent Oliver (attached hereto for your convenience), we cannot obtain the medical records pertaining to the incident without the executed medical releases and the Letters of Administration naming Adela Pagan as administrator of the estate of Mario Ocasio. We need executed versions of both the general release and the FDNY Emergency Medical Service release form. To assist with this process, the attached forms already have the correct names populated in the appropriate fields. The general release previously submitted will not suffice because it is signed by Ms. Pagan on her own behalf, rather than on the behalf of the deceased. Thank you for your attention to this matter. Please feel free to reach out if you have any questions.

Sincerely,

Jeff Loperfido

**Jeffrey Loperfido** | **Senior Counsel**
Special Federal Litigation Division
New York City Law Department
100 Church Street, Rm 3-197
New York, NY 10007
t: 212.356.2384 | f: 212.356.3509
jloperfido@law.nyc.gov

---

**From:** Migdalis, Paraskevi (Law)
**Sent:** Wednesday, November 04, 2015 11:11 AM
**To:** 'israel'
**Cc:** Loperfido, Jeffrey (Law); Oliver, Vincent (Law)
**Subject:** RE: Notice of Filed ECF Case No.1:15-cv-05825 | Counsel for Adela Pagan

Dear Mr. Burns,

As you filed your complaint in federal court, this matter was transferred to an attorney in our special federal litigation unit. His name is Jeffrey Loperfido. They will be handling the matter from here on out. I transferred my entire file to them.

Thanks,
Peggy

---

**From:** israel [mailto:israel@burnsconsulting.us]
**Sent:** Tuesday, November 03, 2015 1:18 PM
**To:** Migdalis, Paraskevi (Law)
**Cc:** Oliver, Vincent (Law)
**Subject:** RE: Notice of Filed ECF Case No.1:15-cv-05825 | Counsel for Adela Pagan

Ms. Migdalis,

Please confirm that you did not receive these Authorizations at the 50(H) hearing.
Also, has the transcript for the 50(H) hearing been delivered?

If so please forward our copy.

Thanks,

Israel Adam Burns, Esq.

_____

Israel A. Burns
Burns Consulting Inc
israel@burnsconsulting.us
30 Broad St. 14th Flr.
New York, NY 10004
Office: 347 709 2491
Fax: 718 744 2782

www.linkedin.com/in/israelburns

http://www.burnsconsulting.us
http://twitter.com/B_Consulting_Us

The information in this e-mail including any attachments is confidential and may be legally privileged. If you are not the intended recipient, please advise the sender immediately by return e-mail and then delete this e-mail and any attachments from your system. The unauthorized use, distribution, copying or alteration of this e-mail and any attachments is strictly forbidden. We have taken precautions to reduce the risk of transmitting software viruses but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses.

# EXHIBIT B

# Loperfido, Jeffrey (Law)

| | |
|---|---|
| **From:** | Loperfido, Jeffrey (Law) |
| **Sent:** | Thursday, November 05, 2015 12:39 PM |
| **To:** | 'israel' |
| **Cc:** | Larkin, Arthur (Law) |
| **Subject:** | Pagan v. City of NY, et al - ECF Case No.1:15-cv-05825 |

Mr. Burns,

Following up on our telephone call today and your subsequent email, we are not available for a call to chambers as there is nothing in the Court's orders or individual rules authorizing that course of action. Telephone calls are only permitted "in urgent situations requiring immediate attention, such as a deposition dispute," Indiv. Rules II.B., and the Court made clear that if it "desires further submissions from the parties, it will request them," 10/26/15 Electronic Order. Accordingly, we do not consent nor object to plaintiff submitting a responsive filing to the City's opposition, but, instead, leave it to the discretion of the Court, as was ordered.

With regard to settlement, we have no position at this juncture.

Regards,

Jeff

**Jeffrey Loperfido | Senior Counsel**
Special Federal Litigation Division
New York City Law Department
100 Church Street, Rm 3-197
New York, NY 10007
t: 212.356.2384 | f: 212.356.3509
jloperfido@law.nyc.gov

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ADELA PAGAN in her own right and as Administrator of the ESTATE OF MARIO OCASIO, deceased,

                                Plaintiff,

           -against--

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, and EMERGENCY MEDICAL SERVICES as operated by New York City Fire Department,

                                Defendants.

-------------------------------------------------------------------X

**PLAINTIFF'S INITIAL DISCLOSURES**

15 CV 5825 (ARR) (RLM)

**PLEASE TAKE NOTICE** that Plaintiff Adela Pagan, by her attorneys, Burns Consulting Inc., pursuant to Federal Rule of Civil Procedure Rule 26(a)(l)(A), upon information and belief, hereby submit its initial disclosures as follows:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:

1. Plaintiff Adela Pagan, c/o Plaintiffs counsel, Israel Adam Burns, Esq.;

2. George Cantrell, address and telephone number unknown, *non-party witness believed to have knowledge regarding the incident involving Mario Ocasio alleged to have occurred on June 8, 2015;*

3. Geneice Lloyd, address and telephone number unknown, *non-party witness believed to have knowledge regarding the incident involving Mario Ocasio alleged to have occurred on June 8, 2015;*

4. Kashif Osagie, address and telephone number unknown, *non-party witness believed to have knowledge regarding the incident involving Mario Ocasio alleged to have occurred on June 8, 2015;*

5. Retired and current NYPD officers who may have knowledge of the investigation into the incident involving Mario Ocasio on June 8, 2015;

6. Individuals presently unknown whose identity will be disclosed during discovery;

7. Any individuals named in Defendants' Rule 26(a)(1)(A) disclosures and any subsequent supplemental disclosures made by plaintiff;

8. Any individuals identified in the documents described herein.

(ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment:

1. Letters of Administration for the Estate of Mario Ocasio, from Bronx Surrogates Court.

2. Notice of Claim made by Adela Pagan as Proposed Administrator of the Estate of Mario Pagan Ocasio, executed on June 17, 2015.

3. The City of New York Office of Chief Medical Examiner, Report of Autopsy for decedent Mario Ocasio (Case No. M15-003458), dated December 12, 2015.

4. Witness Statement of George Cantrell dated June 16, 2015, previously disclosed by plaintiff

5. Witness Statement of Geneice Lloyd dated September 13, 2015, previously disclosed by plaintiff.

6 Witness Statement of Kashif Osagie dated September 13, 2015, previously disclosed by plaintiff.

7 NYPD Property and Evidence Tracking System Chain of Custody for Invoice form for Invoice No. 2000436538.

8 Other documents concerning the underlying incident and/or NYPD investigation into that incident.

(iii) a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each

computation is based, including materials bearing on the nature and extent of injuries suffered; and:

    Not applicable.

(iv)     for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

    Not applicable.


Dated: Brooklyn, New York
       January 12th 2016

**Respectfully submitted,**
BURNS CONSULTING, INC.

Israel Adam Burns, Esq.
19 Bay 8th Street
Brooklyn, New York 11228
Office: 347 709 2491
Fax: 718 744 2782
Email: Israel@burnsconsulting.us
*Attorneys for Defendants*

<div style="text-align: center;">**DECLARATION OF SERVICE**</div>

I, Israel Adam Burns, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that on January 12, 2016 I served a copy of the attached **"PLAINTFF'S INITIAL DISCLOSURES"** upon all other parties in the matter captioned *Adela Pagan v. City of New York, et al.,* 15-cv-5825 (ARR) (RLM) by mailing a copy of the same via First Class Mail as follows:

>Jeffrey Loperfido
>Corporation Counsel of the
>City of New York
>100 Church Street
>New York, New York 10007
>jloperfido@law.nyc.gov

Dated: Brooklyn, New York
January 12, 2016

<div style="margin-left: 50%;">
**Respectfully submitted,**
BURNS CONSULTING, INC.

_____
Israel Adam Burns, Esq.
19 Bay 8th Street
Brooklyn, New York 11228
Office: 347 709 2491
Fax: 718 744 2782
Email: Israel@burnsconsulting.us
*Attorneys for Defendants*
</div>